**ORIGINAL**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

DEC 1 3 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

JOHN MINNICK,                          )
2820 Covington Road                    )
Silver Spring, MD 20910                )
             Plaintiff,            )
                   )
     v.                          )
                   )
KATRINA CARLILE,                       )
4344 Verplanck Place, NW               )
Washington, D.C.  20016                )
             Defendants.           )

Case: 1:10-cv-02109
Assigned To : Kennedy, Henry H.
Assign. Date : 12/13/2010
Description: PI/Malpractice

**JURY ACTION**

## NOTICE OF REMOVAL OF A CIVIL ACTION

      Defendant Katrina Carlile ("Federal Defendant"), an employee of the United States Department of Homeland Security, through the undersigned attorneys, hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1441, 1442(a)(1), 1446, 1346(b), 2401(b), and 2671-80.  In support of that notice, Federal Defendant states as follows:

      1.    Plaintiff filed a civil action styled <u>JOHN MINNICK v. KATRINA CARLILE</u>, now pending in the Superior Court of the District of Columbia, Civil Action No.: 2010 CA 007905, before the Honorable Alfred S. Irving, Jr., Judge.

      2.    The Plaintiff filed the complaint on or around October 19, 2010. The Office of the United States Attorney received service on November 23, 2010, as required under Rule 4(i) of the D.C. Superior Court Rules of Civil Procedure.

      3.    The Plaintiff seeks damages in an unspecified amount for the alleged false statements made with a negligent or reckless disregard for the truth which resulted in adminstrative leave without pay, suspension of security clearance pending an investigation, severe emotional distress,

**RECEIVED**

DEC 1 3 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

1

damage and continuing injury to his reputation, trade and profession made by the federal defendant employee, on or about March and April 2009.  Compl. ¶¶ 20-40 and Relief Sought.

4.    A certification, pursuant to 28 U.S.C. § 2679(d) is attached hereto, substituting the United States as the sole Defendant in this action for any common law claims Plaintiff may be seeking to assert against Federal Defendant Carlile for alleged acts performed under color of her office. (Exhibit A).

5.    Pursuant to 28 U.S.C. § 2679, the United States is the only proper defendant in a suit cognizable under the Federal Torts Claims Act ("FTCA"), that is a tort suit seeking monetary damages for injuries caused by federal employees acting within the scope of their federal employment.  See 28 U.S.C. § 2679.  Therefore, Plaintiff may not bring such a suit against individual federal agencies, or employees, but may bring a suit against the United States.

6.    Because this suit is against the United States pursuant to the FTCA, Plaintiff's claims are ones for which the District Court has original jurisdiction.  Therefore removal is authorized by 42 U.S.C. § 233 and 28 U.S.C. § 1441(a).

WHEREFORE, this action now pending in the Superior Court of the District of Columbia is properly removed to this Court pursuant to 28 U.S.C. §§ 1346(b), 1441, 1442(a)(1), 1446, 2401(b), and 2671-80.

Dated: December 10, 2010                  Respectfully submitted,

                                          RONALD C. MACHEN JR.
                                          UNITED STATES ATTORNEY
                                          D.C. BAR NUMBER 447889

                                          RUDOLPH CONTRERAS, D.C. Bar No. 434122
                                          Assistant United States Attorney

                                   By:    /s/

                                          RHONDA L. CAMPBELL, D.C. Bar No. 462402
                                          Assistant United States Attorney
                                          Civil Division
                                          555 4th Street, N.W.
                                          Washington, D.C.  20530
                                          (202) 514-9519
                                          Rhonda.campbell@usdoj.gov

                                          Counsel for Defendant United States

## CERTIFICATE OF SERVICE

I certify that on December 10, 2010, I caused copies of the foregoing Notice of Removal

of Civil Action, Certification and attachments to be served by first class mail upon:

Marianne Roach Casserly, Esquire
950 F Street, NW
Washington, D.C.  20004

/s/

RHONDA L. CAMPBELL
Assistant United States Attorney

4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN MINNICK,                              )
2820 Covington Road                        )
Silver Spring, MD 20910                    )
        Plaintiff,            )
                        )        Civil Action No.:_____
      v.                             )
                        )
KATRINA CARLILE,                           )
4344 Verplanck Place, NW                   )
Washington, D.C.  20016                    )
        Defendants.           )

## CERTIFICATION

I, Rudolph Contreras, Chief of the Civil Division, Office of the United States Attorney for

the District of Columbia, acting pursuant to the provisions of 28 U.S.C. § 2679(d), and by virtue

of the authority delegated to the United States Attorney by 68 Fed. Reg. 74187, 74189 (Dec. 23,

2003) (updating Attorney General's delegation of authority, effective Jan. 22, 2004) (codified at

28 C.F.R. § 15.4), and first re-delegated to me on March 20, 2006, hereby certify that I have read

the Complaint in the above-captioned civil action, and that on the basis of the information now

available to me with respect to the incident alleged therein, I find that Defendant Katrina Carlile,

was acting within the scope of her employment as an employee of the United States at the time of

the alleged incident.

_12/10/10_
Date

_Rudolph Contreras_ (signature)
RUDOLPH CONTRERAS, DC Bar No. 434122
Assistant United States Attorney
Chief, Civil Division

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

JOHN MINNICK,
2820 Covington Road
Silver Spring, MD 20910

                Plaintiff,

vs.                                                  Case No. _____ 0007305-10

KATRINA CARLILE,
4344 Verplanck Place NW
Washington, DC 20016

                Defendant.

## COMPLAINT

Comes now John Minnick ("Plaintiff" or "Mr. Minnick"), by counsel, and complains against Katrina Carlile ("Defendant") as follows:

### PARTIES

1. Mr. Minnick is an individual residing at 2820 Covington Road, Silver Spring, MD 20910.

2. Ms. Carlile is an individual employed at the Department of Homeland Security headquarters at 20 Massachusetts Avenue, NW, Washington, DC 20536, and is believed to reside at 4344 Verplanck Place NW, Washington, DC.

### JURISDICTION AND VENUE

3. Venue is proper in this court because, among other reasons, Defendant is employed in District of Columbia, is believed to reside in the District of Columbia, and the conduct giving rise to this Complaint occurred in the District of Columbia.

10 2109
**FILED**
DEC 1 3 2010
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

4.      Jurisdiction in this Court against the Defendant is proper under D.C. Code Section § 11-921 or D.C. Code Section § 13-423.

## FACTS

5.      Mr. Minnick is a 21-year federal employee and veteran of the U.S. Marine Corps. After serving in various government capacities, Mr. Minnick joined the United States Department of Homeland Security ("DHS") in May 2004.

6.      Mr. Minnick is a GS-15. In June 2006, he was assigned to the DHS Office of Policy's Private Sector Office (the "PSO").

7.      According to the DHS website, the PSO, among other things, "[e]ngages individual businesses, trade associations and other non-governmental organizations to foster dialogue with the Department," "[p]romotes public-private partnerships and best practices to improve the nation's homeland security," and "[p]romotes Department policies to the private sector."

## MR. MINNICK'S WORK ASSIGNMENT IN TEXAS

8.      In September 2008, Mr. Minnick was sent by his then-supervisors to Texas to work on the hurricane relief efforts after Hurricane Ike.

9.      At this time, Mr. Minnick's supervisors were Al Martinez-Fonts, Assistant Secretary for the Private Sector Office, and Jan Mares, Deputy Director for the Private Sector Office. Both Mr. Martinez-Fonts and Mr. Mares were political appointees of the Bush Administration.

10.      Commencing in mid-September 2008 and following until mid-March 2009, Mr. Minnick worked in Texas on the Hurricane Ike relief efforts. As an employee of the DHS

-2-

Private Sector Office, Mr. Minnick's role was to serve as the DHS Private Sector Office representative within the FEMA Joint Field Office following Hurricane Ike.

11.   After working in Texas for several weeks, Mr. Minnick came to perform two additional roles as well. Upon the specific request made by Judge Robert A. Eckels of Texas to former DHS Secretary Chertoff, Mr. Minnick was requested to work with Texas Governor Rick Perry's Commission for Disaster Recovery and Renewal. Thereafter, the FEMA Federal Coordinating Official named Mr. Minnick his Special Assistant for the Private Sector.

12.   Mr. Minnick would also travel back to the Washington, DC headquarters on occasion for mandatory meetings and other duties that required him to be present at DHS headquarters.

## CHANGE IN POLITICAL ADMINISTRATION

13.   Beginning in approximately late January or February 2009, political appointees from the new Obama Administration were assigned to the PSO.

14.   As a political appointee of the Bush Administration, Mr. Mares resigned from DHS on January 20, 2009. Mr. Martinez-Fonts stayed on with the new Obama Administration for two months after the change of administration, and resigned from DHS on March 27, 2009. Thus, Mr. Martinez-Fonts was the DHS supervisor overseeing Mr. Minnick's assignment in Texas through the entirety of the assignment.

## THE MARCH 2009 TRIP TO TEXAS

15.   In the first week of March, 2009—during the last week of Mr. Minnick's assignment in Texas—another DHS PSO employee, Marvin Fell, and the Defendant, a DHS student intern in the Policy Office, accompanied Mr. Minnick on a trip to Texas for meetings relating to the Hurricane Ike recovery efforts.

- 3 -

16.     Mr. Fell is a civil servant economist working for the DHS Policy Office, and has been a federal employee for 30 years.

17.     At the time of the March 2009 trip, Defendant was an unpaid student intern who commenced her internship at DHS in January 2009.

18.     Mr. Minnick had asked Mr. Fell to take the trip to assist with the economic recovery in Texas after Hurricane Ike.  Defendant was asked to join the trip because she was from Texas originally, and Mr. Minnick thought that Defendant might be interested in working on the Hurricane Ike recovery efforts.

19.     During the trip to Texas, Mr. Minnick, Mr. Fell, and Defendant met with the Texas Department of Transportation, the Texas General Land Office, county officials from Chambers County, and officials from the Port of Galveston.  As a result of these meetings, Mr. Fell agreed to work with the Texas Department of Transportation and the Texas General Land Office to perform cost-benefit analyses that were required by these state government agencies in the aftermath of Hurricane Ike.

**DEFENDANT MAKES FALSE STATEMENTS ABOUT MR. MINNICK**

20.     Upon information and belief, when the three-day trip concluded, the Defendant made false and disparaging statements to her superiors at DHS headquarters about Mr. Minnick's work performance while he was assigned to work in Texas.

21.     Defendant was an unpaid student intern at the time the statements were made; had been working at DHS for only two months; and spent three days with Mr. Minnick (out of the 6+ months he spent working in Texas all together).

- 4 -

22.     Upon information and belief, she disparaged Mr. Minnick by making statements to her superiors at DHS intended to convey the impression that Mr. Minnick was not performing legitimate work while assigned to work in Texas in support of the Hurricane Ike relief efforts.

23.     Defendant's statements about Mr. Minnick were made with a negligent or reckless disregard for the truth.

24.     Defendant's false statements are directly contradicted by Mr. Minnick's supervisors, Mr. Martinez-Fonts and Mr. Mares, and by Mr. Fell, the 30-year DHS employee who accompanied Mr. Minnick and Defendant on the March 2009 trip to Texas.

25.     Defendant's statements were outrageous in light of her brief tenure at DHS, her position as a student intern, and the short duration of the business trip that she took with Mr. Minnick and Mr. Fell in March 2009.

26.     Defendant's statements have had a devastating impact on Mr. Minnick and have resulted in severe emotional distress, requiring medical attention and counseling.

27.     Defendant's statements have injured Mr. Minnick in his trade and profession.

**THE MATTER GETS REFERRED TO THE DHS OFFICE OF SECURITY**

28.     Upon information and belief, in late April 2009, as a result of Defendant's false statements, Mr. Minnick's new political appointee supervisors referred Defendant's claims about Mr. Minnick to the DHS Office of Security for review, and Mr. Minnick's security clearance was suspended while the DHS Office of Security conducted an investigation.

29.     Thereafter, Defendant submitted a Declaration to DHS Office of Security dated September 28, 2009, asserting, *inter alia,* that "Mr. Minnick had not produced a single report, brief, or memo on what he had been involved in, what his mission goals were, or what progress

- 5 -

had been made, if any, in his recovery-related efforts" during his entire seven (7) month work assignment in Texas (4 months of which Defendant was not even working at DHS).

30.   In the Declaration, Defendant further asserted that Mr. Minnick had no apparent ideas or knowledge of how to assist the people of Texas who had been impacted by the hurricane.

31.   In the Declaration, Defendant further asserted that Mr. Minnick had no demonstrated record of any actual accomplishment while working in Texas.

32.   In the Declaration, Defendant made other statements intended to convey the impression that Mr. Minnick was not performing legitimate work while working in Texas.

33.   Mr. Minnick became aware of Defendant's false statements for the first time on October 19, 2009, when the DHS Office of Security provided Mr. Minnick with a copy of the Declaration submitted by Defendant.

34.   Due to the DHS review time for security clearance investigations, Mr. Minnick remains on administrative leave without pay as of the date of this filing while the Office of Security completes the review.

35.   Defendant's Declaration about Mr. Minnick was submitted with a negligent or reckless disregard for the truth.

36.   Defendant's false statements are directly contradicted by Mr. Minnick's supervisors, Mr. Martinez-Fonts and Mr. Mares, and by Mr. Fell, the 30-year DHS employee who accompanied Mr. Minnick and Defendant on the March 2009 trip to Texas.

37.   Defendant's statements contained in her Declaration were outrageous in light of her brief tenure at DHS, her position as a student intern, and the short duration of the business trip that she took with Mr. Minnick and Mr. Fell in March 2009.

- 6 -

38.     Defendant's statements have had a devastating impact on Mr. Minnick and have resulted in severe emotional distress, requiring medical attention and counseling.

39.     Defendant's statements have injured Mr. Minnick in his trade and profession.

40.     As a result of Defendant's false statements, Mr. Minnick has been on administrative leave without pay since November 2009.  Mr. Minnick has suffered damages in the form of lost pay and other economic damages resulting from Defendant's false statements, including loss of amounts from Mr. Minnick's retirement fund that he has been forced to withdraw as a result of having no monthly pay.

## COUNT I
## RECKLESS DISREGARD FOR THE TRUTH / FRAUD (ORAL STATEMENTS)

41.     Plaintiff re-alleges and adopts herein by reference each of the averments set forth in paragraphs 1 through 40 above.

42.     Defendant made statements about Mr. Minnick's work performance while assigned to Texas.

43.     Defendants' statements were made with a reckless disregard for the truth.

44.     Defendants' superiors at DHS relied on these misrepresentations when they referred the matter to the DHS Office of Security for review.

45.     Defendants' actions have caused damage and continuing injury to Mr. Minnick for which Mr. Minnick is entitled to recover damages and obtain other relief.

## COUNT II
## RECKLESS DISREGARD FOR THE TRUTH / FRAUD (WRITTEN STATEMENTS)

46.     Plaintiff re-alleges and adopts herein by reference each of the averments set forth in paragraphs 1 through 40 above.

- 7 -

LEGAL02/32229318v1

47.     Defendant submitted a written statement about Mr. Minnick's work performance while assigned to Texas.

48.     Defendants' written statements were made with a reckless disregard for the truth.

49.     The DHS Office of Security relied on these misrepresentations when they decided to suspend Mr. Minick's security clearance pending an investigation.

50.     Defendant's actions have caused damage and continuing injury to Mr. Minnick for which Mr. Minnick is entitled to recover damages and obtain other relief.

## COUNT III
## DEFAMATION

51.     Plaintiff re-alleges and adopts herein by reference each of the averments set forth in paragraphs 1 through 40 above.

52.     Defendant made false and defamatory statements about Mr. Minnick's work performance while assigned to Texas.

53.     Defendant submitted a Declaration containing these false and defamatory statements to the DHS Office of Security.

54.     Defendants' statements were made negligently and/or with a reckless disregard for the truth.

55.     Defendant's actions have caused damage and continuing injury to Mr. Minnick for which Mr. Minnick is entitled to recover damages and obtain other relief.

## COUNT IV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (ORAL STATEMENTS)

56.     Plaintiff re-alleges and adopts herein by reference each of the averments set forth in paragraphs 1 through 40 above.

- 8 -

57.    Defendant's statements to her superiors about Mr. Minnick's duty performance while he was assigned to work in Texas were made intentionally and with negligent disregard for the truth.

58.    Defendant's statements have caused severe emotional distress to Mr. Minnick.

59.    Defendant's actions have caused damage and continuing injury to Mr. Minnick for which Mr. Minnick is entitled to recover damages and obtain other relief.

## COUNT V
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (WRITTEN STATEMENTS)

60.    Plaintiff re-alleges and adopts herein by reference each of the averments set forth in paragraphs 1 through 40 above.

61.    Defendant's written statements to the DHS Office of Security about Mr. Minnick's duty performance while he was assigned to work in Texas were made intentionally and with negligent disregard for the truth.

62.    Defendant's statements have caused severe emotional distress to Mr. Minnick.

63.    Defendant's actions have caused damage and continuing injury to Mr. Minnick for which Mr. Minnick is entitled to recover damages and obtain other relief.

## COUNT VI
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (ORAL STATEMENTS)

64.    Plaintiff re-alleges and adopts herein by reference each of the averments set forth in paragraphs 1 through 40 above.

65.    Defendant's statements to her superiors about Mr. Minnick's work performance were outrageous and false.

- 9 -

66.     Defendant's statements were made intentionally and with reckless disregard for the truth.

67.     Defendant's statements have caused severe emotional distress to Mr. Minnick.

68.     Defendant's actions have caused damage and continuing injury to Mr. Minnick for which Mr. Minnick is entitled to recover damages and obtain other relief.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (WRITTEN STATEMENT)

69.     Plaintiff re-alleges and adopts herein by reference each of the averments set forth in paragraphs 1 through 40 above.

70.     Defendant's statements to the DHS Office of Security in her written Declaration about Mr. Minnick's work performance were outrageous and false.

71.     Defendant's statements were made intentionally and with reckless disregard for the truth.

72.     Defendant's statements have caused severe emotional distress to Mr. Minnick.

73.     Defendant's actions have caused damage and continuing injury to Mr. Minnick for which Mr. Minnick is entitled to recover damages and obtain other relief.

## COUNT VIII
## INJURIOUS FALSEHOOD (ORAL STATEMENTS)

74.     Plaintiff re-alleges and adopts herein by reference each of the averments set forth in paragraphs 1 through 40 above.

75.     Defendant knew or should have known that the false statements made to her superiors at DHS, made with reckless disregard for the truth, would result in pecuniary harm to Mr. Minnick.

- 10 -

76.    Defendant's actions have caused damage and continuing injury to Mr. Minnick for which Mr. Minnick is entitled to recover damages and obtain other relief.

## COUNT IX
### INJURIOUS FALSEHOOD (WRITTEN STATEMENT)

77.    Plaintiff re-alleges and adopts herein by reference each of the averments set forth in paragraphs 1 through 40 above.

78.    Defendant knew or should have known that her false statements contained in the Declaration submitted to the DHS Office of Security, made with reckless disregard for the truth, would result in pecuniary harm to Mr. Minnick.

79.    Defendant's actions have caused damage and continuing injury to Mr. Minnick for which Mr. Minnick is entitled to recover damages and obtain other relief.

## COUNT X
### FALSE LIGHT (ORAL STATEMENTS)

80.    Plaintiff re-alleges and adopts herein by reference each of the averments set forth in paragraphs 1 through 40 above.

81.    Defendant made false statements to her superiors about Mr. Minnick's work performance that place Mr. Minnick in a false light.

82.    Defendant's actions have caused damage and continuing injury to Mr. Minnick for which Mr. Minnick is entitled to recover damages and obtain other relief.

## COUNT XI
### FALSE LIGHT (WRITTEN STATEMENT)

83.    Plaintiff re-alleges and adopts herein by reference each of the averments set forth in paragraphs 1 through 40 above.

LEGAL02/32229318v1

84.     Defendant submitted a Declaration containing false statements to the DHS Office of Security about Mr. Minnick's work performance that place Mr. Minnick in a false light.

85.     Defendant's actions have caused damage and continuing injury to Mr. Minnick for which Mr. Minnick is entitled to recover damages and obtain other relief.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Minnick respectfully requests that judgment be made and entered in its favor and against the Defendant, and that this Court grant the following relief:

A.  Enter an award of compensatory damages in Mr. Minnick's favor in a precise amount to be specified at trial;

B.  Award Mr. Minnick punitive damages; and

C.  Award Mr. Minnick all costs and reasonable attorneys' fees it incurs in the prosecution of this lawsuit.

**JURY TRIAL DEMANDED ON ALL COUNTS.**

Dated: October 19, 2010                    ALSTON & BIRD LLP

*Marianne R Casserly*

Marianne Roach Casserly
D.C. Bar No. 474198
950 F Street, NW
Washington, DC 20004
(202) 756-3379
marianne.casserly@alston.com

*Attorneys for Plaintiff John Minnick*

LEGAL02/32229318v1

*Office of the General Counsel*
U.S. Department of Homeland Security
Washington, DC 20528



Homeland
Security

*TRANSMISSION VIA E-MAIL*

December 9, 2010

Timothy P. Garren
Director, Constitutional and Specialized Tort Litigation
U.S. Department of Justice, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044

RE:   Request for Westfall Act[1] Certification—*Minnick v. Carlile*, D.C. Superior Court,
      No. 2010 CA 007905 B

Dear Mr. Garren

Ms. Katrina Carlile is a named defendant in the above captioned case. We formally request certification that Ms. Carlile was acting within the scope of her employment at all times and substitution of the United States as defendant for Ms. Carlile.

The plaintiff, a Department of Homeland Security (DHS) employee, has sued Ms. Carlile for defamation based on statements she made to DHS superiors while she was a DHS intern as well as statements she made in a written declaration after she had completed her internship with DHS. The declaration was prepared at the request of DHS in order to memorialize the statements Ms. Carlile made regarding her observations while on duty as a DHS intern. (Ms. Carlile is currently a DHS honors attorney.) The specific facts and circumstances concerning this matter are contained in the attached Request for Representation.

Although Ms. Carlile was an intern (unpaid student volunteer) during the relevant time frame, she is considered an employee of DHS for purposes of Federal Tort Claims Act (FTCA) coverage. The FTCA defines an employee of the government to include persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation. 28 U.S.C. § 2671. Ms. Carlile was a student who volunteered her service under the DHS Student Volunteer Employment Program. The head of an agency may accept voluntary service for the U.S. if the service is: performed by a student, to be uncompensated, and will not be used to displace any employee. 5 U.S.C. § 3111(b). Ms. Carlile's service did not displace any employee. Any student who provides voluntary service to the U.S. shall not be considered a Federal employee for <u>any purpose other than for purposes</u> of section 7905 (relating to commuting by means other than single-occupancy motor vehicles), chapter 81 (relating to compensation for injury) and sections 2671 through 2680 of title 28 (relating to tort claims.) 5 U.S.C. § 3111 (c)(1). Ms. Carlile was a Federal employee for purposes of the FTCA.

---

[1] Federal Employees Liability Reform and Tort Compensation Act of 1988.

Timothy P. Garren, DOJ
December 9, 2010
Page Two

Based on the foregoing, we assert that Ms. Carlile was acting within the scope of her employment when she made statements concerning the plaintiff while serving as an intern. Further, we assert that the defamation claim that springs from the written declaration requested by DHS from her after she finished her internship "arises out of or relates to the same" alleged tortious conduct (defamation) when Ms. Carlile was an intern. To determine whether the conduct of an employee is within the scope of employment in this case, we must apply D.C. law. In order for there to be a within the scope of employment determination in D.C., the conduct must (a) be of the kind the servant is employed to perform, (b) occur substantially within the authorized time and space limits, (c) actuated by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpected by the master. [The fourth factor is inapplicable to the facts in this lawsuit.] *Upshaw v U.S.*, 669 F. Supp 2d. 32 (D.D.C. 2009). The test for scope of employment is an objective one, based on all the facts and circumstances. *Id.*

During the course of an official investigation, Ms. Carlile was asked about her observations of the plaintiff's conduct when she and plaintiff were on a temporary duty assignment in Texas. Her statements, as an intern, to DHS officials who were investigating plaintiff directly relate to her duties. Further, her statements were provided to DHS officials shortly after she returned to Washington D.C. from the temporary duty assignment during normal duty hours. Finally, her statements were provided solely because DHS asked for the information. Said information was necessary in furtherance of the DHS investigation. Clearly, Ms. Carlile's verbal statements to DHS officials were made in the scope of her employment. The remaining issue involves the written declaration provided at the request of DHS officials after Ms. Carlile left DHS to return to school memorializing her prior statements when interviewed. That action should be considered to arise out of or relate to the oral statements Ms. Carlile made while serving as an employee.

The remedy for injury resulting from the negligent or wrongful acts or omission of any government employee while acting within the scope of employment is the exclusive remedy. 28 U.S.C. § 2679. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred. 28 U.S.C. § 2679. Because the declaration is merely memorializing Ms. Carlile's prior oral statements when she was an intern, a defamation suit based on the written declaration should be precluded because it arose out of the previous oral statements that she made while acting in scope. Under 28 U.S.C. 2679, Ms. Carlile is entitled to a Westfall certification and to be substituted by the U.S. for the entire proceeding.

Alternatively, we assert that when Ms. Carlile left DHS to return to school, she did not abandon her volunteer status. The facts prove that Ms. Carlile continued to work for DHS as demonstrated by her continued communications with DHS officials concerning plaintiff's conduct during the temporary duty assignment and her providing a written statement memorializing her previous oral statements when she was physically working at DHS in the spring of 2009. 28 U.S.C. § 2679.

2

Timothy P. Garren, DOJ
December 9, 2010
Page Three


The point of contact for this matter in my office is Ms. Charlie Johnson. She may be reached at (202) 447-4076 or at Charlie.M.Johnson@dhs.gov.

                              Sincerely


                              Michael D. Russell
                              Deputy Associate General Counsel for General Law


Atch
Request for Representation Package, dated November 30, 2010