**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

_____

**JOHN MINNICK,**

                              **Plaintiff,**

                   **v.**                                              **1:10-CV-2109
                                                                 (FJS)**

**KATRINA CARLILE,**

                              **Defendant.**

_____

**APPEARANCES**                                          **OF COUNSEL**

**ALSTON & BIRD, LLP**                       **MARIANNE R. CASSERLY, ESQ.**
950 F Street, NW
Washington, D.C. 20004
Attorneys for Plaintiff

**UNITED STATES DEPARTMENT**      **RHONDA LISA CAMPBELL, ESQ.**
**OF JUSTICE**
555 Fourth Street, NW
E4412
Washington, D.C. 20001
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Currently before the Court is the United States' motion on behalf of Defendant, its former employee, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint on the grounds that sovereign immunity bars Plaintiff's claims and that Plaintiff has failed to exhaust his administrative remedies. The United States also asks that the Court formally substitute the United States for Defendant as the sole Defendant in this action.

## II. BACKGROUND

Plaintiff, an employee of the United States Department of Homeland Security ("DHS"), filed a complaint in the Superior Court for the District of Columbia on October 19, 2010, against Defendant, a former intern with DHS.  In his complaint, Plaintiff asserted the following eleven causes of action: (1) reckless disregard for the truth/fraud (oral statements); (2) reckless disregard for the truth/fraud (written statements); (3) defamation; (4) negligent infliction of emotional distress (oral statements); (5) negligent infliction of emotional distress (written statements); (6) intentional infliction of emotional distress (oral statements); (7) intentional infliction of emotional distress (written statements); (8) injurious falsehood (oral statements); (9) injurious falsehood (written statements); (10) false light (oral statements); and (11) false light (written statements).  *See generally* Complaint.

Specifically, Plaintiff alleged that Defendant had made false and disparaging statements to her supervisors about Plaintiff's work performance while he was assigned to work in Texas and that these statements had led to an investigation by DHS's Office of Security ("OS"), the suspension of his security clearance, and to his placement on unpaid administrative leave in November 2009.[1]

On December 13, 2010, acting pursuant to 28 U.S.C. § 2679(d), Rudolph Contreras, Chief of the Civil Division of the United States Attorney's Office for the District of Columbia, certified that, at the time of the alleged incidents described in the complaint, Defendant was acting within the scope of her employment as a United States employee.  Based on this

---

[1] DHS's Chief Security Officer reinstated Plaintiff's security clearance on October 22, 2010, and he returned to work at DHS at that time.

certification, the United States removed the action to this Court.[2]

The United States bases its motion to dismiss on the following theories: (1) the United States should be substituted as the sole Defendant in this action because Plaintiff sued Defendant for conduct within the scope of her employment; and, thus, this action arises, if at all, under the Federal Tort Claims Act ("FTCA") and federal employees cannot be sued personally for their allegedly tortious conduct; (2) sovereign immunity bars Plaintiff's tort claims because the United States has not waived its sovereign immunity under the FTCA with respect to claims arising under, among other things, libel, slander, misrepresentation or deceit; and (3), even if the FTCA encompassed claims such as Plaintiff's, he has not exhausted his administrative remedies under the FTCA, which is a prerequisite to filing a complaint in federal court.

Plaintiff opposes this motion on the ground that Defendant was not acting within the scope of her employment when the alleged actions occurred and, therefore, certification under § 2679 was improper, and the United States should not be substituted as the defendant in this case. Plaintiff does not address the United States' arguments concerning the FTCA.

The Court heard oral argument in support of, and in opposition to, the United States' motion on August 29, 2012, and reserved decision at that time. The Court also provided the parties with an opportunity to submit additional briefing on the issue of whether certification under § 2679 was proper, which Plaintiff did on September 5, 2012, *see* Dkt. No. 13. The following constitutes the Court's written resolution of the pending motion.

---

[2] The United States contends that Plaintiff has not filed an administrative claim with DHS and has never served the United States Attorney as Rule 4(i) of the Federal Rules of Civil Procedure requires.

## III. DISCUSSION

A.  **Preliminary matters**

During oral argument, the Court asked Plaintiff whether he conceded that, if the Court were to find that the United States should be substituted as Defendant, the Court lacked subject matter jurisdiction over his claims because he had not exhausted his administrative remedies under the FTCA. In response, Plaintiff conceded this point.

B.  **Westfall Act certification**

The Federal Employees Liability Reform and Tort Compensation Act of 1988, also known as the Westfall Act, "'accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties.'" *Jackson v. United States*, 857 F. Supp. 2d 158, 160 (D.D.C. 2012) (quotation omitted). Under the Westfall Act, "'when a federal employee is named in a tort suit, the Attorney General or his designees may certify that the employee was "acting within the scope of his office or employment at the time of the incident out of which the claim arose."'" *Id.* (quotation omitted). Pursuant to § 2679(d) of Title 28 of the United State Code,

> [u]pon certification . . . any civil action . . . commenced upon such
> claim in a State court shall be removed . . . to the district court of
> the United States for the district . . . embracing the place in which
> the action . . . is pending. Such action . . . shall be deemed to be an
> action . . . brought against the United States under the provisions of
> [the Federal Tort Claims Act] . . ., and the United States shall be
> substituted as the party defendant. . . .

28 U.S.C. § 2679(d)(2).

A Westfall Act certification is conclusive for the purpose of removal, *see* 28 U.S.C.

§ 2679(d)(2), but "'[a] plaintiff may contest the Attorney General's scope-of-employment certification before a district court.'" *Jackson*, 857 F. Supp. 2d at 160 (quotation omitted).  If a plaintiff challenges the scope-of-employment certification, "the certification 'constitute[s] prima facie evidence that the employee was acting within the scope of his employment.'"  *Id.* (quotation omitted).  To rebut the certification and, thereby, obtain any necessary discovery, "a plaintiff must 'alleg[e] sufficient facts that, taken as true, would establish that the defendant['s] actions exceeded the scope of [his] employment.'"  *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009) (quotation omitted).  If a plaintiff meets this pleading burden, the court may, if necessary, allow the plaintiff to conduct "limited discovery" to resolve any factual disputes over jurisdiction.  *See id.* (citation omitted).  However, "'[n]ot every complaint will warrant further inquiry into the scope-of-employment issue.'"  *Id.* (quotation omitted).  Therefore, if "a plaintiff fails to allege sufficient facts to rebut the certification, the United States must be substituted as the defendant because the federal employee is absolutely immune from suit."  *Id.*

To determine whether an employee was acting within the scope of her employment within the meaning of the Westfall Act, "'courts apply the *respondeat superior* law of the state in which the allege tort occurred.'"  *Taylor v. Clark*, 821 F. Supp. 2d 370, 373 (D.C. Cir. 2011) (quotation omitted).  District of Columbia law, which governs this case, defines "scope of employment" in accord with the Restatement (Second) of Agency.  *See id.* (quotation omitted). Under the Restatement (Second) of Agency,

> "[c]onduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;

>   (c) it is actuated, at least in part, by a purpose to
>   serve the master, and
>   (d) if force is intentionally used by the servant against another, the
>   use of force is not unexpectable by the master."

*Id.* (quoting Restatement (Second) of Agency § 228(1))

"'[T]he test for scope of employment is an objective one, based on all the facts and circumstances.'" *Id.* (quotation omitted). "'Although scope of employment is generally a question for the jury, it "becomes a question of law for the court, however, if there is not sufficient evidence from which a reasonable juror could conclude that the action was within the scope of the employment."'" *Upshaw v. United States*, 669 F. Supp. 2d 32, 40 (D.D.C. 2009) (quotation omitted).

At the motion to dismiss stage, a plaintiff must allege facts that, if true, would establish that the defendant acted outside the scope of her employment. *See id.* at 41 (citation omitted). Regarding the first prong of the scope-of-employment test (whether the alleged conduct is of the kind the person is employed to perform), "'[t]o qualify as conduct of the kind [the individual Federal Defendants were] employed to perform, the[ir] actions must have either been "of the same general nature as that authorized" or "*incidental* to the conduct authorized."'" *Id.* (quotation omitted). "'Conduct is "incidental" to an employee's legitimate duties if it is "foreseeable."'" *Id.* (quotation omitted). Where the plaintiff has alleged an intentional tort, the defendant's claimed tortious conduct "'must be "a direct outgrowth of the employee's instructions or job assignment."'" *Id.* (quotation omitted). Courts construe the term "incidental" very broadly in this context. *See id.* (citations omitted). Courts routinely find that a federal employee's statements made during the course of government investigations fall within the scope of that employee's

duties, even when the statements are alleged to be false or defamatory. *See id.* at 42 (citing *Klugel v. Small*, 519 F. Supp. 2d 66, 74 (D.D.C. 2007) (finding that federal employees were acting in the scope of employment when they made allegedly defamatory statements to the agency's inspector general during an investigation into plaintiff's improper use of official travel); *Hosey v. Jacobik*, 966 F. Supp. 12, 14-15 (D.D.C. 1997) (finding that federal employee's allegedly defamatory statements to investigator during a government security clearance investigation were made within the scope of employment); *Brumfield v. Sanders*, 232 F.3d 376, 380-81 (3rd Cir. 2000) (finding under Restatement (Second) of Agency that employees were acting within the scope of employment when they made allegedly false, defamatory statements about plaintiff to government investigator during investigation regarding plaintiff's unprofessional conduct)).

With respect to the third prong of the scope-of-employment test (whether the alleged conduct was actuated, at least in party, by a purpose to serve the master), the District of Columbia Circuit has held that "'even a *partial* desire to serve the master is sufficient' to satisfy this . . . prong." *Upshaw*, 669 F. Supp. 2d at 43 (quoting *Council on Am. Islamic Relations*, 444 F.3d at 664).

In challenging the Westfall Act certification, Plaintiff asserts that Defendant's statements "assessing the legitimacy of the work that [he] performed while he was detailed to Texas were [not] made within the scope of her duties as an unpaid student intern . . . ." *See* Dkt. No. 4 at 12. Plaintiff further contends that there are two sets of statements at issue in this case: (1) Defendant's oral statements that she made in or about March 2009 to her supervisors when she returned from her trip to Texas with Plaintiff and (2) the written declaration that Defendant

signed on September 28, 2009, five months after her internship with the DHS Office of Policy ended. *See id.*

With respect to Defendant's oral statements, Plaintiff alleges that they were far outside the realm of work that Defendant was employed to perform. *See id.* at 13. Her job function was to learn the functions of the Agency and to gain professional work experience. *See id.* (citing Martinez-Fonts Dec. ¶ 7). Furthermore, Defendant was invited on the Texas trip solely as a courtesy because the DHS employees who invited her thought that she would be interested n working on Hurricane Ike recovery efforts in light of the fact that she was from Texas. *See id.* (citing Minnick Dec. ¶ 7). Her role on the trip was to attend meetings and then assist Marvin Fell with any resulting economic analysis. *See id.* (citing Martinez-Fonts Dec. ¶ 10; Minnick Dec. ¶ 7). Plaintiff argues that for Defendant to return from that trip and make statements assessing the legitimacy of the work that Plaintiff was doing and opining, among other things, that Plaintiff had no demonstrated record of any actual accomplishments during the entirety of his detail assignment is clearly far beyond the scope of her employment and far beyond the duties that she was employed to perform as an unpaid student intern. *See id.* at ¶ 14.

Plaintiff also notes that, based on the evidence that DHS has provided to him about its investigation of him, there was no investigation until some point after March 27, 2009, when Mr. Martinez-Fonts left DHS. *See id.* at 14 (citing Martinez-Fonts Dec. p 12). Thus, Plaintiff asserts that Defendant's statements, which she made shortly after returning from Texas on March 6, 2009, were not made in connection with an ongoing investigation. *See id.* Rather, Plaintiff claims that the evidence suggests that Defendant's complaints were the reason why DHS commenced an investigation. *See id.*

With respect to whether Defendant's conduct was actuated, at least in part, by a purpose to serve her employer, Plaintiff asserts that, because the conduct at issue is so clearly not of the kind that Defendant was employed to perform, any analysis of this point may be unnecessary. *See id.* at 15. However, Plaintiff notes that, whatever Defendant's motives were, they appear to be more aimed at defaming Plaintiff then serving any purpose of DHS. *See id.*

With respect to Defendant's September 2009 written statements, Plaintiff notes that, at the time of these statements, Defendant was no longer employed at DHS. *See id.* at 15. Therefore, Plaintiff argues that these statements cannot be the kind of work that she was employed to perform. *See id.*

Finally, Plaintiff notes that, "[b]ecause the Westfall certification is invalid . . ., the United States should not be substituted as the defendant [and] [c]onsequently, all remaining arguments in the Motion to Dismiss should be denied as moot." *See id.* at 17.

In response to Plaintiff"s challenge to Westfall Act certification, the United States argues that, during the course of an official investigation, DHS officials asked Defendant about her observations of Plaintiff's conduct when she and Plaintiff were on temporary duty assignment in Texas and that it was part of Defendant's duties to respond truthfully to those questions. *See* Dkt. No. 5 at 7.

Furthermore, the United States contends that Plaintiff's argument that, because Defendant made her written statement after she left employment at DHS, that statement was not within the authorized time and space limits of her employment lacks merit. *See id.* at 8. First, Defendant provided her oral statement to DHS officials during normal duty hours shortly after she returned to D.C. from Texas. *See id.* The United States claims that Defendant's written statements simply

memorialize her prior oral statements and thus were substantially within the authorized time and space limits of her employment. *See id.* at 9 (citations omitted).

With regard to the third prong of the scope-of-employment test, the United States asserts that Defendant's allegedly defamatory statements focused solely on Plaintiff's work performance in Texas. *See id.* Furthermore, Deputy Director Tracy Hannah was concerned about the ability of DHS's budget to sustain Plaintiff's continuing presence in Texas, coupled with his activities in Texas during the seven month period he was assigned to Texas because he had not provided his supervisors with any work product or reports related to his activities in Texas. *See id.* at 9-10 (citing Decl. Hannah at ¶¶ 3-5). Therefore, the United States contends that Defendant's statements were motivated, at least in part, by her desire to serve DHS. *See id.* at 10. Furthermore, the United States asserts that Plaintiff has not pled any facts that Defendant's conduct was not motivated in any way by a desire to serve DHS. *See id.*

Based on all the evidence in the record, the Court concludes that Plaintiff has not alleged sufficient facts to rebut the presumption that the Westfall Act certification is valid. In reaching this conclusion, the Court has carefully considered all three prongs of the scope-of-employment test: (1) whether Defendant's conduct was of the kind she was employed to perform; (2) whether Defendant's conduct occurred substantially within the authorized time and space limits; and (3) whether Defendant's conduct was actuated, at least in part, by a purpose to serve her employer, DHS.

With regard to the first prong, Plaintiff does not allege or argue that Defendant's oral and written statements were unsolicited. Nor does Plaintiff argue that Ms. Hannah's rendition of the circumstances under which Defendant made these statements was false. Based on the

-10-

uncontroverted record, it is clear that Ms. Hannah asked Defendant some specific questions about her observations of Plaintiff's performance during the trip that Defendant made to Texas with Plaintiff, and Defendant responded to those questions. Clearly, responding to the questions of her supervisor was incidental to Defendant's employment at DHS. In other words, Defendant's answers to Ms. Hannah's questions were a direct outgrowth of the instructions Defendant received from Ms. Hannah, i.e., to provide her observations and impressions about Plaintiff's performance during their trip to Texas.

With respect to the second prong, Defendant clearly made her oral statements to Ms. Hannah while in the DHS office while she was an intern in that office. Furthermore, although she made her written statements after she had returned to school, those statements merely memorialized her previous statements, a fact that Plaintiff does not dispute. The Court finds that, under these circumstances, Defendant's written statements satisfy the time and space requirements.

Finally, with respect to the third prong, Plaintiff has not alleged facts, which accepted as true, would support a finding that Defendant's conduct was not actuated, at least in part, by a purpose to serve DHS. Although Plaintiff conjectures about possible personal motives for Defendant's statements, the facts demonstrate that none of Defendant's statements were unsolicited. Her supervisor questioned her about her impressions of Plaintiff's performance during her trip to Texas, and she responded to those questions. Plaintiff has not alleged any facts to demonstrate that Defendant's actions were not, at least in part, actuated by a purpose to serve DHS.

In sum, for all of the above-stated reasons, the Court concludes that the Westfall Act

certification is valid. Therefore, the Court will substitute the United States as the sole Defendant in this case and convert this action to one under the Federal Tort Claims Act. As noted, Plaintiff acknowledged at oral argument that, if the Court reached this conclusion, the Court would lack subject matter jurisdiction over his claims because he failed to exhaust his administrative remedies. Therefore, the Court must dismiss this case for lack of jurisdiction. Alternatively, even if Plaintiff had exhausted his administrative remedies, the Court would have to dismiss Plaintiff's claims because the United States has not waived its sovereign immunity under the Federal Tort Claims Act for the type of claims that Plaintiff asserts in this action.

### IV. CONCLUSION

Accordingly, having reviewed the entire file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the United States' motion to dismiss Defendant from this case and substitute the United States as the only Defendant is **GRANTED**; and the Court further

**ORDERS** that the United States' motion to dismiss this case pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of the United States and close this case.

**IT IS SO ORDERED.**

Dated: May 28, 2013
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge